## REYNOLDS et al. *v.* ROWLEY et al.

By the common law, as with us, powers of attorney are subject to strict interpretation; and the authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into full effect. Language, however general, when used in connection with a particular subject matter, is presumed to be used in relation to that matter, and must be construed and limited accordingly.

A general power to buy property for the principal, or to make any contracts and do any other acts whatever which he could if personally present, by the common law, as well as by our law, must be construed to apply only to buying or contracting in connection with his ordinary business, and will not authorize the making of any contracts of an extraordinary character.

A power of attorney executed by a single woman, so far as it confers powers beyond the administration of a plantation belonging to her, with the management of which the agent was charged, will be revoked by her subsequent marriage.

Advances for the principal, made to one who had acted as an agent, but subsequently to the termination of his agency, cannot be recovered from the principal. unless shown to have inured to his benefit.

APPEAL by the plaintiffs from a judgment of the District Court of Concordia, *Barry*, J., rendered on the verdict of a jury. *Elam* and *Thomas*, for the plaintiffs. *Sparrow*, *A. N. Ogden*, *Prentiss* and *Finney*, for different defendants. The judgment of the court was pronounced by

ROST, J. Our attempt, when this case was last before us (2 An. 890), to arrive at a final decision of it, by settling in advance the legal principles on which it turns, and remanding it to be tried before another jury on the issues of fact, has signally failed. An inquiry into the causes of that failure will make the errors of the last verdict apparent, and enable us to replace the parties in their true position towards each other.

We stated in the opinion then delivered, the probability of there being something due to the plaintiffs over and above the proceeds of the crops which they had received. The case was remanded to ascertain the amount of this indebtedness, and the rules we laid down had exclusive reference to what we considered the sole issue to be tried. The verdict of one cent in favor of the defendants, had been immediately remitted, and it was not pretended on the appeal that they had any claim in reconvention. Under that state of facts, we said that, in order to bring the advances made by the plaintiffs within the power of attorney given to *Sprague*, it was necessary that they should have been made, in good faith, for the Marengo plantation, and not for *Sprague* or any one else. We considered farther that, if it was not shown that the advances claimed had inured to the benefit of the defendants, the want of good faith might be inferred, if they were too large, under the true intent and meaning of the mandate.

These rules were applied, because we took as true the allegations upon which this action is based, that the plaintiffs were the factors of the defendants and of the Marengo plantation, and not of *Sprague*; that they acted in that capacity before the appointment of the latter as agent, and had made to the Marengo plantation large advances; and that they continued to act as such after his appointment, and to keep their accounts with the Marengo plantation as before. Under those allegations, we could not view them as third persons dealing on the faith of the agent's authority. We held them to be factors, having a minute knowledge of the wants of their principals, and making advances to the agent of those principals for the purpose of supplying those wants.

On the return of the case to the district court the claims in reconvention were first seriously urged by the defendants, and the rules laid down by the court were applied to this new issue, and thus carried beyond their legal import. This defence succeeded with the jury, and the case is now before us on the appeal of the plaintiffs from a judgment in reconvention, rendered in favor of the defendants for large amounts. The advances to which we had reference were those made over and above the proceeds of the crops which the plaintiffs had received, and,

in relation to them, we do not know that there was error in our view of the law. But that view was not intended to apply, and was not applicable, to the claim in reconvention. After the appointment of *Sprague* as agent, the plaintiffs were bound to account to him every year for the proceeds of the crops; and, in whatever shape he received them, those proceeds cannot be considered as advances. They were payments made by the factors, for which *Sprague's* powers of attorney would be a full guarantee to them, even if the funds had been misapplied. But we are satisfied that they were not. If they had been, the defendant, *Mrs Rowley*, would not have alleged in her answer, as she did, that the plaintiffs received from *Sprague* $20,000 and upwards, to be credited on their account. If, through the mismanagement of *Sprague*, the plaintiffs have become indebted to this defendant in the sum now claimed, it is not to be believed that *Rowley* would have paid *Sprague*, his wife's share of the price of the Marengo plantation when he purchased it, and that the defendant herself would have borrowed money on mortgage to make that payment. The *remittitur* entered by the defendants in the former trial, cannot be viewed otherwise than as an admission that nothing was due them. These facts are utterly inconsistent with the claims in reconvention now set up, and we have not changed our opinion that there is no serious issue in the cause except that which involves the indebtedness of the defendants. That issue must, in a great measure, depend upon the extent of *Sprague's* authority. The counsel of the defendants contend that *Sprague's* agency was limited to the administration of the affairs of the Marengo plantation, and that, in estimating the reasonableness or otherwise of the advances made by the plaintiffs, the necessities of the plantation must be taken as the standard; while those for the plaintiffs maintain that *Sprague* had all the power necessary to a general administration of the property of his constituents, including the Marengo plantation, and also full power and authority to sell, mortgage or pledge the crops, to obtain advances of money or other things on the same, to give notes, draw bills, sign receipts or acquittances, to sell, loan, borrow, buy, or in any other way contract, in the name of his principals, and for their individual uses.

We have already stated the peculiar position in which the plaintiffs stood towards the defendants. But we will examine this question without reference to that circumstance. We take it for granted that, under the common law as with us, powers of attorney are subjected to a strict interpretation, and that the authority is never extended beyond that which is given in terms, or which is necessary and proper for carrying the authority so given into full effect; that language, however general in its form, when used in connection with a particular subject matter, will be presumed to be used in subordination to that matter, and therefore is to be construed and limited accordingly; that a general power to buy property for the constituent, or to make any contracts, and do any other acts whatever, which he could if personally present, must be construed to apply only to buying or contracting connected with his ordinary business, and would not authorize any contracts of an extraordinary character to be made. Story on Agency, sec. 68, 62, 21.

The ordinary business of the defendants was planting. Their main object was undoubtedly to secure supplies for the Marengo plantation, and to provide for its administration and the payment of its debts. This was the subject matter of the powers of attorney, and the presumption is that the general language used was to be understood in subordination to that matter. It is shown that the Marengo plantation owed, at that time, a debt of about $15,000. We must presume that

it was principally in relation to that debt, that those extensive powers to make <span style="float:right">REYNOLDS</span> financial arrangements were given; and the power to buy must be limited to buy- <span style="float:right">ROWLEY.</span> ing for the uses of the plantation.

The plaintiffs' counsel contend that the words, "*to do and perform for us and in our names, or in his own name as agent for Marengo plantation,*" do not import a restriction of his agency to that plantation, but must be understood, as they were used, to designate the name in which he should conduct the affairs of the agency; and that he had ample authority to raise funds for the private use of his principals, as well as for the use of the Marengo plantation. He contends that the defendants have thus understood and executed the mandate, by raising funds for their individual use through the agency of *Sprague.*

On the former appeal we thought that the power of attorney would, to a limited extent, bear that construction, and that if any part of the advances claimed were shown to have been made for the private use of any of the constituents, they would be bound to reimburse the plaintiffs, under the limitations stated in the opinion.

It is urged that the defendants had private debts which were paid out of the funds advanced by the plaintiffs, and that their family expenses during the continuance of the partnership were also defrayed out of those advances. This is probably true. But the difficulty which this case presents arises from the fact, that the amount advanced for the private use of each of the defendants is not shown, and that there is nothing in the powers of attorney which authorized the plaintiffs to charge those advances to the partnership, as they have done.

The power of attorney of *Jane Rowley* was executed in the State of Mississippi, and that of *James Kempe*, in the State of Kentucky. They were distinct acts, showing no privity between the mandators. The authority in both was the same, so far as it related to the Marengo plantation. But the authority given by each to borrow for the private use of the constituent, could not make the loans obtained under it partnership debts. The taxes and other expenses incurred for the lands of *James Kempe*, in Mississippi, for instance, could not be charged to the Marengo plantation, though they might have been included in the general account, provided the entry showed who was responsible for them. The largest sense in which the powers of attorney can be understood is, that *Sprague* was to act in his own name, as agent of the Marengo plantation, in all matters relating to the partnership, and, in the individual names of the constituents, when attending to their private affairs. This was the only authority which the mandators could give, without an express agreement that the Marengo plantation should be responsible for all their private debts.

There is another difficulty in the way of the plaintiffs' recovery upon the accounts filed in this suit. The power of attorney of *James Kempe* expired by his death, in February, 1835, and that of *Mrs. Rowley*, so far as it conferred powers beyond the administration of the Marengo plantation, was revoked by her marriage, in April, 1834. After the agent ceased to have authority, the advances made to him, on their behalf, must be shown to have inured to their benefit, before they can be charged with them.

The proceeds of the crops being much more than sufficient to pay all the expenses of the plantation, and the items stated in the accounts as being due by the defendants individually, the plaintiffs are placed in this dilemma: if the amount of the accounts is claimed for advances made to the Marengo plantation, the amount is so unreasonable as to justify the belief that the advances were not made in good faith; if, on the other hand, that amount is claimed as advances

REYNOLDS
v.
ROWLEY.

made for the private use of the individual partners, and the powers of attorney when in force were sufficiently ample to authorize them, we have no means of ascertaining the separate indebtedness of each of the defendants on that account; and it is not shown that the advances made to *Sprague*, after the expiration of the powers of attorney, inured to their benefit.

After an anxious examination of the evidence, and notwithstanding our impression that the equity of the case is with the plaintiffs, we have come to the conclusion that they have failed to substantiate the allegations of their petition, and that, as there is no reason to believe that further evidence can be obtained, the case should now be closed.

The tutrix of the heirs of *James Kempe* has alleged that *Sprague* placed in the hands of the plaintiffs the sum of $8,000 to be credited to the heirs of *Kempe* on their account, which the plaintiffs received and converted to their own use; she prays a judgment in reconvention for that sum. It is not shown that *Sprauge* had in his hands any funds belonging to *James Kempe*, at the time of the alleged payment. The evidence, on the contrary, goes to show that the $20,000 deposited by him with the plaintiffs his exclusive property; and, as it is admitted that he received from the plaintiffs the advances claimed for which he is personally liable, if the defendants are not, the plaintiffs had a perfect right to convert that sum to their own use. When it was paid to them, *Sprague* was no longer the agent of the heirs of *Kempe*, and could do no act for them.

The premises considered, it is ordered that the judgment in this case be reversed. It is further ordered that the claim of the plaintiffs, and that of the defendants in reconvention, be both disallowed; and that there be judgment in favor of the defendants, with costs in both courts.